**Ernest Murry MOORE Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–06–00656–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 1, 2008.

Discretionary Review Granted Oct. 15, 2008.

Rehearing Overruled June 12, 2008.

Shawna L. Reagin, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

A jury convicted appellant, Ernest Murry Moore Jr., of the felony offense of capital murder. The trial court assessed appellant's punishment at life imprisonment, which is the only possible sentence since the State did not seek the death penalty. *See* TEX. PEN.CODE ANN. §§ 12.31 (Vernon 2003), 19.03 (Vernon Supp.2007). In nine points of error, appellant contends that the trial court erred in (1) denying his *Batson*[1] challenges, (2) refusing to grant a mistrial after the State's expert rendered medical attention to a juror during the trial, and (3) refusing to allow appellant to introduce certain "specific instances" evidence concerning appellant's treatment of children pursuant to Rules of Evidence 404(a)(1)(A) and 405(b). *See* TEX.R. EVID. 404(a)(1), 405(b). We conclude the record shows that the prosecutor's reasons for using a peremptory strike on an African–American woman were contrived to conceal racially discriminatory intent and that the trial court clearly erred by failing to grant appellant's *Batson* challenge to the juror. We reverse and remand.

## I. Factual Background

The complainant, J.A., was the twenty-month-old daughter of Alyndria Johnson and Jermaine Amerson. By the time that J.A. was born on June 23, 2001, Amerson and Johnson had ended their relationship, and Amerson had begun a relationship

---

1. *Batson v. Kentucky,* 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986).

with Troyshetta Angelo. Angelo had previously been in a relationship with appellant. At some point, appellant developed a relationship with Johnson, J.A.'s mother, and the couple began living together.

Initially, J.A. stayed in the care of Amerson and Angelo, but in February 2003, J.A. began living with appellant and Johnson. On the morning of March 14, 2003, Johnson left her apartment to go to school. At the time, J.A. was asleep in her bed, and appellant had fallen asleep on the couch. When Johnson returned home after her first class, both were still asleep. Prior to leaving the apartment for school again, Johnson woke up appellant and requested that he feed J.A. While Johnson was at school, she received a text message from appellant indicating that J.A. was choking. Emergency medical personnel who were summoned found J.A. unconscious and unresponsive. Upon examination, it was revealed that she was not choking, and that there was no obstruction to her airway.

J.A. was transported to Texas Children's Hospital, where medical staff found that J.A. had suffered extensive injuries indicating non-accidental trauma. Specifically, an examination of her internal organs revealed significant injury to her liver. Additionally, medical personnel discovered that J.A.'s brain, small bowel, and pancreas were severely injured. Several blood vessels in J.A.'s abdominal cavity had been torn, resulting in internal bleeding due to blunt force trauma to her abdomen. Examination of J.A.'s chest revealed that she suffered mild bruising to her thymus and heart. J.A. died in the hospital two days after she sustained these injuries. The Harris County Medical Examiner's Office concluded that J.A. died of blunt trauma to the head and ruled the death a homicide.

## II. *Batson* Challenge

In his first through seventh points of error, appellant contends that the trial court erred by denying his *Batson* challenge because the State used its peremptory challenges to strike seven of nine African–Americans from the venire, using seven of the State's ten peremptory strikes to exclude them. The State contends that appellant has not shown that the prosecutor's race-neutral explanations were a pretext and, therefore, that the trial court properly denied appellant's *Batson* challenge.

### A. *Batson*—Article 35.261 Principles

■ Using a peremptory challenge to strike a potential juror because of race violates the equal protection guarantee of the United States Constitution, *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986), as well as article 35.261 of the Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 35.261 (Vernon Supp.2006). In the face of perceived purposeful discrimination, the defendant may request a *Batson* hearing. *See* TEX.CODE CRIM. PROC. ANN. art. 35.261(a) (Vernon Supp.2006).

■ A defendant's *Batson* challenge to a peremptory strike is a three-step process. *Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995); *Simpson v. State*, 119 S.W.3d 262, 268 (Tex.Crim.App.2003). The defendant must first make a prima facie case of racial discrimination, based on the totality of relevant facts about the prosecutor's conduct during the trial. *Miller–El v. Dretke*, 545 U.S. 231, 239, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005); *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770; *Simpson*, 119 S.W.3d at 268; *see* TEX.CODE CRIM. PROC. ANN. art. 35.261. If the defendant makes a prima facie case, the burden of production shifts to the State to present a

race-neutral reason for its challenged strike, a reason that is "a clear and reasonably specific explanation of [the] legitimate reasons" for exercising its strike. *Miller–El,* 545 U.S. at 239, 125 S.Ct. at 2324; *see* Tex.Code Crim. Proc. Ann. art. 35.261(a) ("If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the State to give a racially neutral explanation for the challenges."). A reason is deemed race neutral if no discriminatory intent is inherent in the prosecutor's explanation. *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771; *Thomas v. State,* 209 S.W.3d 268, 270 (Tex.App.–Houston [1st Dist.] 2006, no pet.)

▮▮▮ When the prosecutor responds by offering a race-neutral explanation, the inquiry whether the defendant has made a prima facie case becomes moot, and the defendant may rebut the State's explanation. *Simpson,* 119 S.W.3d at 268; *Jasper v. State,* 61 S.W.3d 413, 421 (Tex.Crim. App.2001). In the third and final step, the trial court must decide whether the defendant carried the burden to establish purposeful discrimination. *Miller–El,* 545 U.S. at 239, 125 S.Ct. at 2325; *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771; *Simpson,* 119 S.W.3d at 268. The trial court's inquiry addresses whether the neutral reasons provided by the prosecutor for the peremptory challenge were contrived in order to conceal racially discriminatory intent. *Jasper,* 61 S.W.3d at 421.

▮▮▮ Throughout the challenge, the burden of persuasion remains with the defendant, Tex.Code Crim. Proc. Ann. art. 35.261(a), who may continue to rebut the prosecutor's explanations before the trial court decides the *Batson* challenge. *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771; *Simpson,* 119 S.W.3d at 268; *see Thomas,* 209 S.W.3d at 270.

### B. Standard of Review Applicable to *Batson* Challenges

▮▮▮ A reviewing court examines jury selection from a cold record. *Satterwhite v. State,* 858 S.W.2d 412, 415 (Tex. Crim.App.1993). In other words, it is the trial court who has the opportunity to view each venireperson's demeanor and to evaluate his or her credibility and, ultimately, is in the better position to pass on the challenges for cause presented. *Satterwhite,* 858 S.W.2d at 415 (citing *Smith v. State,* 676 S.W.2d 379, 387 (Tex.Crim.App. 1984)). Consequently, we cannot reverse a trial court's ruling on a *Batson* challenge unless it is clearly erroneous. *See Gibson v. State,* 144 S.W.3d 530, 534 (Tex.Crim. App.2004). To hold that a trial court clearly erred, we must have a "definite and firm conviction that a mistake has been committed." *Goldberg v. State,* 95 S.W.3d 345, 385 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd). We may not substitute our opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for exercising strikes, and we focus on the genuiness, rather than the reasonableness, of the prosecutor's asserted nonracial motive. *Gibson,* 144 S.W.3d at 534 n. 5 (*citing Purkett,* 514 U.S. at 765, 115 S.Ct. at 1771–72). We give great deference to the trial court's determination, and we view the evidence in the light most favorable to the trial court's ruling. *Gibson,* 144 S.W.3d at 534 n. 6 (*citing Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997)); *Jasper,* 61 S.W.3d at 422.

### C. *Batson* Hearing

In response to the State's exercise of its strikes, appellant's trial counsel asserted a *Batson* challenge,[2] contending that the

---

**2.** In addition to the oral motion, appellant's attorney lodged a written *Batson* objection at trial.

State had struck seven veniremembers based solely on their race. A venire of 65 people was summoned for jury selection. After the trial court granted five challenges for cause, the panel of prospective jurors consisted of 32 members, ending with juror number 37.[3] The State used ten peremptory strikes, seven of them on the nine African–Americans seated within the first 37 members of the venire. No African–American potential jurors were challenged for cause. Appellant is an African–American.

The record confirms that the prosecutor exercised peremptory challenges against 78 percent of the African–American potential jurors on the panel. One African–American served on the jury. Another African–American, a parole officer, who indicated that he might favor the State, was struck by the defense.

At the *Batson* hearing, the prosecutor offered her reasons for striking the seven veniremembers. We review each peremptory strike of an African–American venireperson and the explanation offered by the State for each. *See Harper v. State*, 930 S.W.2d 625, 634 (Tex.App.–Houston [1st Dist.] 1996, no pet.).

### 1. Veniremember Collins

 Collins, Juror Number 1, was a 64–year–old African–American woman employed as a certified surgical technician. At the *Batson* hearing, the prosecutor testified that, in response to a line of questioning by appellant's counsel about current attitudes concerning child abuse, Collins's responses indicated that "she may be more inclined that things are re-ported that may not be necessary to be reported." After Hutchison, Juror Number 3 agreed that, in recent years, "our ideas about child abuse have changed," but that "[m]ore abuse is accepted," Collins disagreed. The following exchange then took place:

> Veniremember Collins: Well, I feel that child abuse is more prevalent now and it's more out in the open that more people can hear about it. And the more people that hear about it, they do not like it. They want something done about it.

> Appellant's Counsel: Do you think— sometimes my friends and I laugh. You can tell probably about how old I am. My friends and I sometimes laugh among ourselves that if we disciplined our children the way our parents disciplined us, that we would be in prison today.

> Veniremember Collins: Uh-huh.

Collins was not asked whether she agreed with the comment of appellant's counsel.

Appellant argues that Collins's viewpoint was shared by the entire panel and that the prosecutor exercised the strike against Collins in a disparate manner. In support of this, appellant cites *Thomas v. State*, 209 S.W.3d 268 (Tex.App.–Houston [1st Dist.] 2006, no pet.). In *Thomas*, there were five victims of crime on the panel, but the prosecutor struck only an African–American female whose boyfriend had been robbed, despite her representation that the experience would not influence her jury service. *Id.* at 271–75. The prosecutor testified that she had exercised

---

**3.** Both the State and appellant struck juror number 3. The twelveth juror to be seated was juror number 32. The trial court gave the State and appellant an additional strike for the selection of an alternate juror. Taking into account the selection of an alternate juror, the panel of prospective jurors ended at juror number 40. The alternate juror, juror number 38, who was seated, did not serve on the jury. Appellant's *Batson* challenge does not complain of error with respect to the use of strikes in the selection of the alternate juror.

the peremptory challenge because she did not like crime victims on her juries, yet she failed to strike any of the non-African American crime victims. *Id.* at 273. This Court reversed the conviction, holding comparative evidence showed disparate treatment. *Id.* at 275.[4]

Appellant's counsel contends that, in addition to Collins, other jurors indicated that parents do not currently discipline children as they did in the past. The record does not support appellant's claim. For instance, Hutchinson said more child abuse is accepted today than in the past. Therrien, Juror Number 5, said attitudes about child abuse had changed, but she did not indicate why or how they had changed. Burr, Juror Number 7, said that communication in society has made people more aware of what is done behind closed doors.

▉ In contrast, the record reflects that Collins was the only juror to agree with the statement of appellant's attorney that "if we disciplined our children the way our parents disciplined us . . . we would be in prison today." Striking a juror for a perceived bias against an aspect of the challenger's case is a legitimate, nonracial reason for exercising a strike. *Johnson v. State*, 68 S.W.3d 644, 649–50 (Tex.Crim. App.2002). The trial court was entitled to believe that the State did not strike Collins on account of her race. Because the record supports the prosecutor's statement that Collins was the only juror to agree with appellant's counsel's beliefs about discipline, we cannot conclude that the trial court clearly erred in denying appellant's Batson challenge with respect to Collins or that Collins was treated disparately.

### 2. Veniremember Dorsey

▉ Dorsey was a 35–year–old African American male employed as an operator for Texas Instruments. The prosecutor testified that she felt Dorsey was too enthusiastic and represented that he was saying "Amen" when the panel was asked about the rights that a criminal defendant is guaranteed under the law. She informed the trial court that she felt that Dorsey "may go overboard in terms of holding the State to a higher burden." When explaining her reasons for striking Dorsey, the prosecutor stated that during appellant's voir dire, Dorsey repeatedly attempted to get the attention of appellant's counsel, "leading me to believe that he had more to say when she—in regards to that type of stuff. It was not just based on his color."

During the *Batson* hearing with regard to Dorsey, appellant's counsel offered the following in response:

> Appellant's Counsel: He said nothing. Believing in [the] presumption of innocence is not ground[s] for being struck. That means that he can't—he couldn't follow the law, but he agreed that he believed in the presumption of innocence. I don't think anything was verbally said about that, holding the State to a higher burden. In fact, he agreed with the principles of law being discussed by the Court. He was not alone.

▉ On appeal, appellant further disputes the prosecution's account of Dorsey's demeanor, arguing that there is no indication in the reporter's record that Dorsey said "Amen" or was attempting to get the attention of appellant's counsel. If a peremptory strike is based on a veniremember's nonverbal conduct, the striking party must describe that conduct in order to avoid an inference of discrimination. *Price v. Short*, 931 S.W.2d 677, 682 (Tex. App.–Dallas 1996, no pet.). Similarly, if

---

**4.** *See also* discussion *infra* Part II(C)(7).

counsel's strike relied upon some sort of nonverbal response not reflected in the written record, such as head nodding, facial expression, or arm crossing, the law requires counsel to describe specifically the behavior on which he or she relied. *Hill v. State*, 827 S.W.2d 860, 870 (Tex. Crim.App.1992).

Appellant is correct that the record on appeal shows no verbal statements by Dorsey. However, during the *Batson* hearing, the State adequately described nonverbal conduct that led the prosecutor to believe that Dorsey might be biased against the State. Specifically, Dorsey was repeatedly trying to get the attention of appellant's counsel, appellant's counsel would not call on Dorsey when he tried to get her attention, and Dorsey was overzealous in his agreement with concepts like the presumption of innocence.

Additionally, during the *Batson* hearing, appellant's counsel failed to directly refute the prosecutor's statements that Dorsey repeatedly used nonverbal conduct to try to get the attention of the appellant's attorney and was overzealous in his acknowledgment of certain principles. The trial court was in the best position to determine whether the statements of the prosecutor as to Dorsey's demeanor and actions were true, and we must defer to the trial court's assessment of the prosecutor's characterization of the nonverbal conduct by Dorsey. *See Yarborough v. State*, 947 S.W.2d 892, 895 (Tex.Crim.App.1997); *Davis*, 187 S.W.3d at 583 (holding that trial attorney's statement about occurrence in courtroom, which was made for purposes of record, recorded by court reporter, undisputed by opposing counsel, and unquestioned and unqualified by trial court, in whose presence statement was made, established occurrence for purposes of appellate record.); *see also White v. State*, 982 S.W.2d

642, 645–46 (Tex.App.–Texarkana 1998, pet. ref'd) (concluding unsworn statements of counsel may be offered to explain why peremptory challenges were exercised). In accordance with the requirement that we view the record in a light most favorable to the trial court's ruling, we cannot conclude from the cold record here that the trial court clearly erred by implicitly concluding that the explanation offered by the State was race-neutral.

Appellant also contends that the prosecutor's statement that the strike of Dorsey "was not just based on his color" constitutes an admission that the peremptory challenge was executed, at least in part, because of his race. The Court of Criminal Appeals was confronted with a similar situation in *Tompkins v. State*, 774 S.W.2d 195, 205 (Tex.Crim.App.1987), *aff'd*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). There, the trial prosecutor stated that he had exercised a peremptory challenge against a prospective juror because he had been an employee of the United States Postal Service, not "simply" because he was black. *Id.* at 205. In light of the prosecutor's explanation, the Court found that the prosecutor's peremptory challenge was based on the "sole reason" that the veniremember was a postal worker and that such explanation was race-neutral. *Id.*

Though we cannot say the that trial court clearly erred in believing the prosecutor's proffered explanation with respect to veniremember Dorsey, as we discuss further with respect to veniremember Harris, *infra*, the statement is troublesome.[5] The statement, "It was not just based on his color," affirmatively indicates that the prosecutor was operating under the misconception that striking a juror because of his skin color was not intentional

---

5. *See* discussion *infra* Part II(C)(7).

discrimination, as long as another reason existed.

### 3. Veniremember Moore

■ Moore was a 21–year–old African–American male employed as a laborer. The following exchange arose during a discussion of expert witnesses for the defense:

Appellant's Counsel: ... But, for example, I guess what I'm trying to say is sometimes people think that, you know, if the Defense puts on, for example, experts, expert testimony, they might hear evidence that that person has been paid for the work that they have done on the case, paid to testify. And people just—some people might say, well, I'm not going to believe anybody for that reason, who was paid by the other side to come and testify.

What do you—let's see. Juror No. 17, Mr. Moore, what do you think about that? Are we right to kind of be afraid that people might feel that way?

Veniremember Moore: No.

Appellant's Counsel: I'm sorry?

Veniremember Moore: No.

Appellant's Counsel: And why do you think that is? I'm sorry. Why do you think we shouldn't be afraid?

Trial Court: You have to answer, Mr. Moore.

Veniremember Moore: I said "No."

Trial Court: She's asking you an additional question. Answer her question, please.

Appellant's Counsel: Can you tell us why we shouldn't worry about whether people are going to, you know, not listen to our witnesses.

Veniremember Moore: I don't know?

■ The prosecutor testified that Moore was falling asleep during voir dire and did not seem to understand the questions asked by appellant's attorney. A trial prosecutor may exercise a peremptory challenge against a prospective juror because that veniremember was sleeping during voir dire. *See Lamons v. State*, 938 S.W.2d 774, 778 (Tex.App.–Houston [14th Dist.] pet. ref'd) (holding that prospective juror's sleeping during portions of voir dire was alone sufficient to justify peremptory challenge); *Irvine v. State*, 857 S.W.2d 920, 926; *Tiede v. State*, 104 S.W.3d 552, 559–60 (Tex.App.–Tyler 2000), *vacated on other grounds*, 76 S.W.3d 13 (Tex.Crim.App.2002).

The trial court was in the best position to determine whether the prosecutor correctly characterized the juror's conduct in court as inattentive. Further, appellant's counsel did not dispute the trial prosecutor's suggestion that the prospective juror was sleeping. We must, therefore, view the record in a light most favorable to the trial court's ruling and conclude that the occurrence is established for the purposes of the appellate record. *Yarborough*, 947 S.W.2d at 895; *Davis*, 187 S.W.3d at 583; *White*, 982 S.W.2d at 645–46.

Appellant's counsel responded to the State's proffered reason for striking Moore, asserting that several of the prospective jurors did not answer her questions. The record shows, however, that Moore was the only juror whose inattentiveness rose to the level that he was twice admonished by the trial court. The trial court told Moore to answer the question and then later told him to "Answer her question, please." We conclude that the prosecutor's exercise of a peremptory challenge against Moore on the grounds that he did not seem to understand the questions asked by appellant's counsel is a race-neutral reason to strike Moore. *Chiles v. State*, 57 S.W.3d 512, 516–18 (Tex. App.–Waco 2001, pet. dism'd) (concluding that venireperson's inability to understand

legal principles is race-neutral justification for striking venireperson); *Williams v. State*, 939 S.W.2d 703, 706–07 (Tex.App.–Eastland 1997, no pet.) (holding that prosecutor established race-neutral reason for strike when juror had difficulty understanding "beyond a reasonable doubt" standard); *C.E.J. v. State*, 788 S.W.2d 849, 857 (Tex.App.–Dallas 1990, writ denied) (stating that venireperson's inattentiveness may be sufficiently race-neutral reason to justify use of peremptory strike).

Examining the record in the light most favorable to the trial court's ruling, we conclude that the trial court's decision on appellant's *Batson* challenge of Moore was not clearly erroneous.

#### 4. *Veniremember Johnson*

█ Johnson was a 25–year–old African–American male employed as a vendor at Aramark. The prosecutor testified that Johnson was struck because he "had a DWI in Galveston County ... He didn't tell us about it ... we asked him about it and he lied." Appellant's attorney responded that "several" other prospective jurors had admitted to having driving-while-intoxicated arrests or convictions, but that peremptory challenges had not been exercised against them.

█ The failure of a prospective juror to fully disclose his criminal record or background is a race-neutral reason for the exercise of a peremptory challenge. *See Shuffield*, 189 S.W.3d at 785 (holding explanation that trial prosecutor was not sure that prospective juror was being completely honest about his criminal background to be race-neutral); *Johnson*, 68 S.W.3d at 648 (holding peremptory challenge race-neutral when prospective juror failed to disclose prior arrest for driving while license suspended); *Ealoms v. State*,

983 S.W.2d 853, 856 (Tex.App.–Waco 1998, pet. ref'd.) (upholding trial prosecutor's exercise of peremptory challenge in part because prospective juror did not reveal arrest record in response to questions asked by prosecutor); *Yarborough*, 983 S.W.2d at 354–55 (upholding trial prosecutor's exercise of peremptory challenge after prospective juror stated on juror information card that he had not been arrested or charged with criminal offense, trial prosecutor exercised peremptory challenge against prospective juror because he had not been completely honest regarding his prior criminal history, and trial prosecutor had run criminal history on each venire member and had discovered that particular prospective juror had been arrested in 1974 for unlawfully carrying prohibited weapon).

The record reflects that only Delagarza responded to the trial court's voir-dire inquiry into whether any of the potential jurors had been the accused in a criminal matter. Delagarza said he was convicted of driving-while-intoxicated (DWI), but Johnson did not offer a response. The jury questionnaires also asked the jurors to state whether they were a complainant, witness or accused in a criminal matter. Johnson checked "no" on his questionnaire in response to the question, while Delagarza checked "yes." Thus, the record shows that in contrast to Delagarza, who was forthcoming about his criminal record, Johnson was not.

We hold the trial court did not err in implicitly finding the State provided racially neutral explanations for its peremptory strike of Johnson. *See Shuffield*, 189 S.W.3d at 785; *Johnson*, 68 S.W.3d at 648; *Ealoms*, 983 S.W.2d at 856; *Yarborough*, 983 S.W.2d at 354–55.[6] In the absence of

---

**6.** The trial prosecutor also noted that Johnson appeared to agree with appellant's counsel

during her questioning about a police scandal concerning overtime pay. Appellant's coun-

a showing of purposeful discrimination on the part of appellant, we cannot say that the trial court impermissibly overruled appellant's *Batson* challenge.

### 5. Venire Member Cooper

 Cooper was a 51–year–old African–American female employed as a postal service clerk. The prosecutor testified that she struck Cooper because, in her view, postal workers do not make good jurors. Appellant responds that there is "no rationale behind a State policy of striking all postal workers from all juries."

Courts have previously held that when the State indicates that it challenged a prospective juror based on that person's type of employment and that the State has had poor success with that type of worker, the reason is a race-neutral explanation for exercising the peremptory challenge. *Middleton v. State*, 187 S.W.3d 134, 142 (Tex.App.–Texarkana 2006, no pet.) (citing *Tompkins v. State*, 774 S.W.2d 195, 205 (Tex.Crim.App.1987)); *Barnes v. State*, 855 S.W.2d 173, 174 (Tex.App.–Houston [14th Dist.] 1993, pet. ref'd).[7]

In *Middleton*, the trial prosecutor exercised peremptory challenges against two African–American prospective jurors because they were employed by the University of Texas, noting that he had always challenged persons employed by the University of Texas because "they are very anti-prosecution ... they tend to want to forgive people from any kind of criminal activity ... they are weak on finding people guilty, and even if they find them guilty, they tend to be very liberal on the issue of punishment." *See Middleton*, 187 S.W.3d at 142. The *Middleton* court found the prosecutor's race-neutral explanation for striking the two jurors was sufficient because there were no other university employees on the panel that the State did not strike. *Id.* at 142.

Here, too, Cooper was the only venire-member employed by the United States Postal Service. Therefore, we cannot conclude that the trial court clearly erred in accepting the State's race-neutral explanation with respect to the strike of Cooper, or that Cooper was treated disparately from other panel members.

### 6. Veniremember Ards

 Ards was a 51–year–old African–American male who listed his occupation as "security" on the jury questionnaire. During questioning by appellant's counsel, Ards stated: "Just for the record, I'm retired TDC [Texas Department of Corrections]. I don't think it would affect my judgment or anything, but just so you know." According to the prosecutor, she struck Ards because "my experience with persons who have worked in TDC, they see a lot more than—a lot of the cases that we may bring to the table may be [sic] more serious, may be [sic] don't think as serious. For that reason I struck him."

sel responded that approximately 20 prospective jurors had acknowledged hearing about the reported scandal, but that no prospective juror stated that he or she had already decided guilt on the particular issue in that situation. Appellant's counsel did not dispute that Johnson agreed with her on that subject.

7. *See also Brown v. State*, 56 S.W.3d 915, 918 (Tex.App.–Houston [14th Dist.] 2001, no pet.) (exercising peremptory challenge based upon type of employment held by prospective juror and prosecutor's poor success with that type of worker is race-neutral explanation for exercising peremptory strike); *Prosper v. State*, 788 S.W.2d 625, 627 (Tex.App.–Houston [14th Dist.] 1990, pet. ref'd) (refusing to find error where trial prosecutor exercised peremptory challenge against prospective juror because he was prison guard, and prosecutor was unsure that prison guard could assess life sentence).

Neither counsel questioned Ards about the nature of his work with the TDC. During the *Batson* hearing, appellant countered the strike by noting that there are no more serious cases than capital murder cases, and that it was ludicrous "for the State to argue that someone from law enforcement is suddenly unacceptable to them because of his job in law enforcement." On appeal, appellant urges that "to find a prison employee unacceptable as a juror, purely because of his job, ought to be sufficient to establish the pretextual nature of [the prosecutor's] reasoning."

■ As we note above, a race-neutral explanation for exercising a peremptory challenge is the State's claim that it has had poor success with that type of worker. *See Middleton,* 187 S.W.3d at 142; *Barnes,* 855 S.W.2d at 174. Here, the State represented that a TDC prison guard may view the instant case involving a child less seriously than other cases because of his association with the most serious offenders. The State did not assert that it has had poor success with corrections workers generally or with other law enforcement jurors in the past, which diminishes the genuineness of the State's explanation. But, without more, we cannot say that the trial court clearly abused its discretion in accepting the prosecutor's proffered reason. *See Middleton,* 187 S.W.3d at 142; *Barnes,* 855 S.W.2d at 174.

Appellant further contends that the prosecutor's race-neutral explanation for the strike was pretextual because she did not strike other members of law enforcement who were also members of the venire. Appellant accurately represents that the record shows that two prospective jurors employed in law enforcement were not struck by the State. These two jurors, however, were not similarly situated to Ards.

Baines, the first of these prospective jurors, was an African–American parole officer. Baines did not serve on the jury because appellant struck him. Appellant's counsel told the trial court that she struck Baines because he said he would lean in favor of the State. The record shows that Baines responded during questioning by appellant's counsel, that he would "maybe" be on the side of the State. Thus, although Baines, like Ards, was in law enforcement, Baines said he was leaning in favor of the State, a fact that distinguishes Ards.

The second law enforcement officer, Aldrich, was a peace officer with the City of Baytown. During voir dire questioning by the prosecutor, Aldrich said he could be fair and not give other officers extra credit when they testify. The State did not use a peremptory strike on Aldrich. The record plainly shows, however, that, even including alternates, the jury of twelve plus an alternate that would be chosen from the panel of prospective jurors ended no higher than juror number 40. Aldrich was juror number 47, and therefore out of the strike zone. The State would have no reason to exercise a peremptory strike on a juror that could not possibly be seated on the jury.

For these reasons, we cannot conclude that the trial court clearly erred in concluding that appellant did not meet his burden of persuasion in proving purposeful discrimination with respect to the strike of veniremember Ards.

### 7. *Veniremember Harris*

■ Harris was a 45–year–old African–American female who marked on her jury questionnaire that she was employed as a paraeducator. During the course of the hearing on appellant's *Batson* objection, the following colloquy occurred:

State: Number 16. She's one of the few females on the panel that didn't have any children. There was one other female that didn't have any children. I struck her, No. 25. They spoke about kids in her classroom that she had dealt with. Number 16, she's older, doesn't have any children. We had some general questions about her questionnaire where she put question marks on several areas.

Appellant's Counsel: I didn't see any question marks.

State: Have you ever served on a civil or criminal jury.

. . .

Appellant's Counsel: I would like to have the juror information cards submitted into evidence or into the record to show that there were many, many Caucasians and Hispanic people that did not answer questions like this woman answered those questions. It's not unusual for somebody—again, we heard from several Caucasian members of the panel who couldn't even articulate what kind of case they sat on, what happened, what building they were in, or what the case was about.

Juror No. 6, I believe, Mr. Vogel—

State: We struck him too, Judge.

Appellant's Counsel: But as far as the questionnaire—and I'd further like to submit that it appears that 18 percent of the panel is African–American and the State has used 70 percent of their strikes against African–Americans.

Thus, the State gave its reasons for striking Harris as follows:

1. She placed question marks on her juror information card;
2. She had no children;
3. She was female; [8]
4. She was "older."

Examining the record, we address whether the trial court clearly erred in implicitly concluding that the State's strike of Harris was not impermissibly motivated by race. We begin by conducting a comparative analysis of the panelists struck by the State with those panelists not struck by the State to test the State's assertions of the race-neutral reasons for exercising those strikes.

### a. Comparative Analysis

#### i. Questionmarks on the Juror Information Card

One of the State's race-neutral reasons for striking Harris was that she did not completely fill out the questionnaire that each juror was given. A prospective juror's failure to complete his or her juror information card has been held a legitimate basis for a peremptory challenge. *See, e.g., Ester v. State,* 151 S.W.3d 660, 662 (Tex.App.–Waco 2004, no pet.) (failing to answer several questions on juror information card, and slowness in acknowledging trial attorney, even when being addressed directly); *Newsome v. State,* 829 S.W.2d 260, 265 (Tex.App.–Dallas 1992, no pet.) (prospective juror's carelessness or

---

**8.** One of the reasons the State expressed for the strike appears to be impermissible—that prospective juror Harris was female. *See Guzman v. State,* 85 S.W.3d 242 (Tex.Crim. App.2002). Although she objected to the State's strike of Harris "under the cases of *Swain* and *Batson,*" appellant's attorney failed to lodge an explicit *Batson* objection based on gender and has not briefed the issue. Consequently, we will not consider this point on appeal. *See Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771 (stressing that, in *Batson* challenge, the ultimate burden of persuasion regarding impermissible motivation rests with, and never shifts from, the opponent of the strike); *cf. Ford v. State,* 1 S.W.3d 691 (Tex. Crim.App.1999) (holding appellant met his burden of production regarding *Batson* challenge at trial, but failed to meet his burden of persuasion at trial).

error in completing juror information card is race-neutral reason for exercising peremptory challenge).[9] The questionnaire given to each member of the venire asked, "Have you ever served on a civil jury?", and "Have you ever served on a criminal jury?" Harris answered both questions "No" but placed small question marks next to her "No" answers.

During the *Batson* hearing, appellant contended that the State's reliance on the questionnaire was a pretext for discrimination because the State did not strike other members of the venire who did not completely fill out the requested data about prior jury service. Appellant is correct that other members of the venire did not completely answer every question posed by the questionnaire. Specifically, the record shows that two venire members did not respond fully to the questions concerning jury service, and left them blank. The first veniremember, Moore, was an African–American struck by the State for the reasons previously detailed in this opinion.[10] The second veniremember, Sabins, was a 50–year–old Anglo man who ultimately served on the jury.

We find no meaningful difference between a prospective juror's failure to answer the questions regarding prior jury service and the presence of question marks next to answers to those same questions. Thus, the record affirmatively demonstrates that the State did not strike all the jurors who did not accurately or completely fill out the information about kinds of jury service. Moreover, the State did not ask Harris any questions about her answers to the jury service questions. For this reason, and others that will be discussed *infra*, our comparative analysis brings the genuineness of the State's proffered race-neutral reason into question.

### ii. "Older" Female with No Children

Another reason proffered by the State for the strike of Harris was that Harris was an "older" female with no children. During jury selection, the prosecutor had explained that she wanted jurors with children because they were familiar with the difficulties in dealing with children.

Consistent with her trial strategy, the prosecutor represented to the trial court that in addition to Harris, she also struck prospective juror number 25, Maria Martinez, because she was also a female who had no children. The status of not having children has been held a race-neutral explanation for the exercise of a peremptory challenge. *Cantu v. State*, 842 S.W.2d 667 (Tex.Crim.App.1992); *Roy v. State*, 891 S.W.2d 315 (Tex.App.–Fort Worth 1994, no pet.).

As appellant notes, however, the State did not strike Martinez. Appellant, rather than the State, struck Martinez.[11] Unlike Harris, Martinez filled out her juror questionnaire completely, but the only difference between Martinez and Harris was a difference in age. At the time of the

---

**9.** *See also Ealoms v. State*, 983 S.W.2d 853, 856 (Tex.App.–Waco 1998, pet. ref'd) (*citing Satterwhite v. State*, 858 S.W.2d 412, 423 (Tex. Crim.App.1993)); *Yarborough v. State*, 983 S.W.2d 352, 355–56 (Tex.App.–Fort Worth 1998, no pet.); *Jones v. State*, 845 S.W.2d 419, 421 (Tex.App.–Houston [1st Dist.] 1992, pet. ref'd).

**10.** *See* discussion *supra* Part II(C)(3).

**11.** In its brief, the State explains that the trial prosecutor simply made a mistake in referring to juror number 25 and must actually have been referring to a strike made against venire member Johnson, who also had no children. However, our review of the record reveals that Johnson is the African–American male that the State struck for the reasons articulated in Part IIC(4) *supra*. Accordingly, we are not persuaded by the State's explanation concerning the trial prosecutor's mistake.

*Batson* hearing, Martinez was 28 years old and Harris was 45 years old. Both Martinez and Harris worked in education, Martinez as a teacher, and Harris as a paraeducator, or teacher's aide. Both indicated that they had completed four years of college. Both indicated they had no children. More importantly, the State treated Harris and Martinez as similarly situated—in striking Harris, the State represented that it had also struck Martinez (though it had not.)

Thus, the record affirmatively indicates that the State struck Harris, an African-American, for being a 45 year-old-female with no children, but did not strike Martinez, a non-African-American 28 year-old-female with no children and strikingly similar characteristics.[12] Moreover, at the *Batson* hearing, the State represented to the trial court that it had struck Martinez when in fact it had not. This disparity brings the genuineness of the State's proffered race-neutral reason into question.

### b. Pattern of Strikes

As explained by the Court of Criminal Appeals:

[T]he bare fact of strikes exercised against persons of a certain race does not necessarily reveal the work of a racially prejudiced mind. What may be revealing, however, is a repetition of such strikes in suspiciously large numbers—numbers larger than one would expect if race had nothing to do with it. Establishing a prima facie case in this way, based only on the relative number of peremptory challenges against members of an identifiable race, is not impossible. Judges at all levels must frankly assess the legitimate inferences to be drawn from statistical evidence made

12. We also note that the State failed to strike a non-African-American 25–year–old man

available to them before making up their minds. Sometimes such evidence will be telling.

*Linscomb v. State,* 829 S.W.2d 164, 166 (Tex.Crim.App.1992).

In *Miller–El v. Dretke,* 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), upon which appellant relies, the prosecution exercised ten peremptory challenges to exclude 91% of the African Americans who were potential members of the jury. *Miller–El,* 545 U.S. at 240–41, 125 S.Ct. at 2325. Appellant notes that in *Miller–El,* the State peremptorily challenged 12% of the qualified non-African American panel members, but eliminated 91% of the African–American ones. *Id.* at 266, 125 S.Ct. at 2340. The *Miller–El* Court concluded that these statistics, along with other factors including side-by-side comparisons of veniremembers who were struck with those who were not, indicated the State's proffered reasons for its strikes were a pretext for purposeful discrimination. *See Miller–El v. Dretke,* 545 U.S. 231, 240–41, 253–55, 264–66, 125 S.Ct. 2317, 2325–26, 2332–33, 2338–40, 162 L.Ed.2d 196 (2005).

Similarly, in *Thomas,* this Court found purposeful discrimination when statistics showed that the State used its ten peremptory strikes to exclude six of the seven of the African–Americans on the panel of 38 eligible jurors, or 86% percent. Comparative analysis in that case showed that the State's reason for exercising a peremptory strike against an African–American juror whose friend was victimized by crime, was equally on point with several non-African American jurors who had themselves been affected by crime. *Thomas,* 209 S.W.3d at 274.

with no children.

We follow the directive of *Miller–El* and *Thomas* in considering whether the State's proffered reason for a strike was a pretext for purposeful discrimination by examining, in addition to our comparative analysis above, whether statistics show a disproportionate use of peremptory strikes to exclude African–Americans from the venire.

As appellant notes, the State used its ten peremptory strikes to exclude seven of the nine African–Americans on the panel of eligible jurors, or 78% of the African–Americans eligible to serve on the jury. These statistics, like those in *Miller–El*, show a disproportionate use of peremptory strikes (70%) to exclude most of the African–Americans from the venire.

### c. Questioning of Veniremember Harris

Additionally, the State failed to question Harris meaningfully. The only questions directed to Harris during voir dire were by appellant's counsel:

Appellant's Counsel: If you were to be a juror hearing evidence about what we've heard this case is about, an intentional killing of a child, what sort of things, you know, do you think the jury should be looking for in that kind of case?

Veniremember Harris: What's presented—the facts that are presented.

Appellant's Counsel: And do you have any thoughts about what kind of evidence you would expect to hear maybe?

Veniremember Harris: I would be open-minded.

The State did not direct any questions to Harris. When the party striking has offered an explanation for exercising the strike, and further questioning of the panelist might have yielded more information, but little or no questioning of that panelist ensued, the record suggests that the striking party's explanation is fictitious. *See Emerson v. State*, 851 S.W.2d 269, 274 (Tex.Crim.App.1993) (holding explanation that panelist struck because panelist was college teacher or student and therefore presumed to be liberal was not persuasive in light of failure to ask any questions of panelist.) *See also Whitsey v. State*, 796 S.W.2d 707, 716 (Tex.Crim.App. 1989) (rejecting genuineness of strike when State contended it struck a teacher because of belief that teachers are liberal, but State failed to ask any questions regarding political or social outlook); *Hill v. State*, 827 S.W.2d 860, 869 (Tex.Crim.App. 1992) (rejecting State's race-neutral reason for strike when questioning of African American veniremember was perfunctory). Thus, the prosecutor's failure to ask further questions of Harris regarding her experience with children operates in favor of the conclusion that the prosecutor's proffered reason for the strike was not genuine.

### d. The Genuineness of the State's Proffered Reasons

In assaying the record for clear error on a claim of a *Batson* violation, the reviewing court should consider the entire record of voir dire. *Watkins v. State*, 245 S.W.3d 444, 448 (Tex.Crim.App.2008). The Supreme Court recently reaffirmed this principle in *Snyder v. Louisiana*, 552 U.S. ——, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).[13] The Court emphasized that, in considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear

---

**13.** In that case, the Supreme Court reversed the petitioner's conviction, reasoning that the prosecutor's explanation for striking a college senior attempting to fulfill his student-teaching obligation insufficient by itself and sufficing for a *Batson* error determination. *See Snyder*, 128 S.Ct. at 1212.

upon the issue of racial animosity must be consulted. *Id.* at 1208 (citing *Miller–El,* 545 U.S. at 239, 125 S.Ct. at 2324.) As an example, the Court noted that a reviewing court may be called upon to consider the strike of one veniremember for the bearing it might have on another veniremember. *Id.*

In the instant case, other evidence in the record points to purposeful discrimination. As noted previously with respect to veniremember Dorsey, the prosecutor stated that her strike "was not just based on his skin color." [14] This remark indicates that the prosecutor did not eliminate skin color from her consideration in exercising strikes in this case, as our laws and Constitution require, but rather believed that skin color could be a consideration as long as other reasons presented themselves. Equally significant is the trial prosecutor's misrepresentation to the trial court that she had struck Martinez, whom she advanced to the trial court as a juror similarly situated to Harris, when in fact she had not struck Martinez.

In its defense of its strike of Harris, the State responds that appellant cannot point to other prospective jurors who both did not have any children and also did not completely or accurately fill out their juror information cards. In responding to the *Batson* challenge in the trial court, however, the prosecutor advanced Martinez as a similarly situated juror in defending the strike of Harris. The record does not support a conclusion that striking Harris was race-neutral, and the statement about not striking Martinez was simply a mistake. *See Miller–El,* 545 U.S. at 252, 125 S.Ct. at 2331. ("If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.").

The prosecutor asked no questions of Harris in voir dire, and nothing in the record indicates that she, a teacher's aide with four years of college, would be unacceptable as a juror, when Martinez, a teacher who also had no children, was acceptable. The prosecutor's representation to the trial court that she also had struck Martinez when, in fact, she had not, was inaccurate. This misstatement presented the trial court with a flawed basis on which to evaluate the race-neutral reasons presented.

Applying the range of factors set forth in *Miller–El* and *Thomas,* comparative analysis, the statistical pattern of strikes, the questioning patter of the prosecutor, the error in presenting Martinez to the trial court as a similar juror whom the State had struck when in fact it had not, and the prosecutor's comment on the record, we hold that appellant has met his burden to establish a *Batson* violation with respect to juror Harris. *Snyder,* 128 S.Ct. at 1208; *Miller–El,* 545 U.S. at 239, 125 S.Ct. at 2324.

We sustain appellant's *Batson* point of error and therefore do not reach the remaining issues challenged in the appeal.

## V. Conclusion

We reverse the judgment of the trial court and remand the cause.

---

**14.** *See* discussion *supra* Part II(C)(2).