

NUMBER 13-12-00175-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LAKIM MINTRELL GUILD,                               **Appellant,**

**v.**

THE STATE OF TEXAS,                                   **Appellee.**

## On appeal from the 24th District Court of Jackson County, Texas.

# MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Garza and Longoria
## Memorandum Opinion by Justice Longoria

By three issues, appellant, Lakim Mintrell Guild, appeals his conviction for assault-family violence, a third-degree felony offense, enhanced by two prior felony convictions. *See* TEX. PENAL CODE ANN. § 22.01(b)(2) (West 2011). We affirm.

# I. Background

Appellant was indicted for the offense of assault-family violence. In relevant part, the indictment alleged as follows:

> [Appellant] intentionally or knowingly cause[d] bodily injury to L'Tanya Nicole Bryant by hitting [her] in the face or mouth with his fist and pulling [her] hair and said offense was committed against a member of the family and household of [appellant] and [appellant] had been previously convicted of an assault against a family and household member, to-wit: in Cause No. 06-4560, Count 2 of the Division E Court of Jefferso[n] Parish, Louisiana, on the 21st day of May, 2007.

Appellant pleaded not guilty to the charged offense. Subsequently, a jury found appellant guilty. The trial court assessed a 50-year prison sentence. This appeal ensued.

## II. *Batson* Challenge

In his first issue, appellant argues that the trial court erred in denying his *Batson* challenge. *See Batson v. Kentucky*, 476 U.S. 79, 85 (1986).

### A. Applicable Law

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and article 35.261 of the Texas Code of Criminal Procedure prohibit the use of peremptory challenges to exclude venire members on the basis of race. *See* U.S. CONST. amend. XIV, § 1; TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006); *Batson*, 476 U.S. at 85. In the face of perceived purposeful discrimination, the defendant may request a *Batson* hearing to address the challenge. TEX. CODE CRIM. PROC. ANN. art. 35.261(a).

Trial courts follow a three-step process when resolving *Batson* challenges. *Snyder v. Louisiana*, 552 U.S. 472, 476 (2008); *Young v. State*, 283 S.W.3d 854, 866

2

(Tex. Crim. App. 2009).  First, the defendant must make a prima facie showing that the State exercised a peremptory challenge on the basis of race.  *Snyder*, 552 U.S. at 476; *Young*, 283 S.W.3d at 866.  Second, if the prima facie showing has been made, the burden of production shifts to the State to articulate a race-neutral reason for its strike. *Snyder*, 552 U.S. at 478; *Young*, 283 S.W.3d at 866.  A reason is deemed race-neutral if no discriminatory intent is inherent in the explanation given.  *Purkett v. Elem*, 514 U.S. 765, 768 (1995).  In the third and final step, the trial court determines whether the defendant has carried his burden to prove purposeful discrimination.  *Snyder*, 552 U.S. at 477; *Young*, 283 S.W.3d at 866.  Throughout the challenge, the burden of persuasion remains with the defendant, who may continue to rebut the prosecutor's explanations before the trial court decides the *Batson* challenge.  *Moore v. State*, 265 S.W.3d 73, 78 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Purkett*, 514 U.S. at 768).  The defendant must prove by a preponderance of the evidence that the allegations of purposeful discrimination were true in fact and that the prosecutor's reasons were merely a sham or pretext.  *Watkins v. State*, 245 S.W.3d 444, 451–52 (Tex. Crim. App. 2008).

**B.  Standard of Review**

"On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous."  *Snyder*, 552 U.S. at 477.  To hold that a decision was "clearly erroneous," we must be left with a "definite and firm conviction that a mistake has been committed."  *Moore*, 265 S.W.3d at 78 (quoting *Goldberg v. State*, 95 S.W.3d 345, 385 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)).  Appellate courts must give great deference to credibility and demeanor determinations made by the trial

3

court in connection with a *Batson* inquiry. *Snyder*, 552 U.S. at 487 (observing that "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge"). We may not substitute our opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for exercising strikes. *Gibson v. State*, 144 S.W.3d 530, 534 n.5 (Tex. Crim. App. 2004); *see Snyder*, 552 U.S. at 477 (holding "in the absence of exceptional circumstances," deference should be given to trial court).

We view the evidence in the light most favorable to the trial court's ruling. *Young*, 283 S.W.3d at 866. We focus on the genuineness rather than on the reasonableness of the State's asserted race-neutral reason. *Gibson*, 144 S.W.3d at 533–34. In evaluating the genuineness of the State's proffered race-neutral reasons, we consider "all of the circumstances that bear upon the issue of racial animosity[.]" *Snyder*, 552 U.S. at 478 (citing *Miller-El v. Dretke*, 545 U.S. 231, 239 (2005)).

## C. Discussion

Appellant made a *Batson* challenge after the State struck Sterling Watson, the only black venireman on the jury panel. The trial court immediately inquired whether the State had a race-neutral explanation. The State responded to the challenge as follows:

> Your honor, we do have a race-neutral reason why we struck Mr. Sterling Watson, number three, and that is because we have prosecuted over 13 different Watson's [sic] in this county and we believe that they are related to Sterling Watson. That's our basis for the strike.

Subsequently, the following exchange occurred:

The Court:          Anything else on that?

[Defense Counsel:]  Nothing that we know about, Your Honor.

[Prosecutor:]          No.

4

The Court: The Batson challenge is denied.

We begin our analysis with the second step of the *Batson* challenge process, which requires the State to articulate a race-neutral explanation for its strike.[1] "At the second step of this process, the proponent of the strike need only tender an explanation that is race neutral on its face." *Watkins,* 245 S.W.3d at 447. "[T]he second step of the *Batson* challenge process does not demand an explanation that is persuasive, or even plausible." *Nieto v. State*, 365 S.W.3d 673, 679 (Tex. Crim. App. 2012). The reason is valid "as long as racial discrimination is not the motive." *Id*.

In this case, the prosecutor stated that the venireman's possible relationship to other defendants, not racial discrimination, was the motive for the strike. Furthermore, no discriminatory intent is inherent in the explanation given for the strike. Therefore, we proceed to the third step of the *Batson* challenge process.

In the third step of the *Batson* challenge process, the trial court must determine whether the opponent of the strike has proved purposeful racial discrimination. *Watkins*, 245 S.W.3d at 447. In this step, the "ultimate plausibility" of the State's race-neutral explanation is considered. *Id*. "The trial court's ruling in the third step must be sustained unless it is clearly erroneous." *Nieto*, 365 S.W.3d at 676. "The clearly erroneous standard is highly deferential because the trial court is in the best position to determine if the prosecutor's explanation is genuinely race neutral." *Id*. "The trial court must focus on the genuineness of the asserted non-racial motive, rather than the

---

[1] *See Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008) ("Once the opponent of the challenged strike raises a question of purposeful discrimination, if the trial court then proceeds immediately to the second step by inquiring of the proponent whether he had a non-discriminatory purpose, a reviewing court is to assume that the opponent has satisfied his step-one obligation to make a prima facie case of purposeful discrimination and address only the second and third steps.").

5

reasonableness." *Id.* "We defer to the trial court's ruling in the absence of exceptional circumstances." *Id.*

"An appellate court should consider the entire record of the voir dire and need not limit itself to the specific arguments brought forth to the trial court by the parties." *Id.* "A reviewing court may not substitute its judgment for the trial court's in deciding that the prosecutor's explanation was a pretext." *Id.* "Just like the trial court, the reviewing court must focus on the genuineness, rather than the reasonableness, of the asserted non-racial motive." *Id.* We must consider the following factors tending to show that the State's reason for a peremptory strike is not supported by the record or is an impermissible pretext:

> 1. The reason given for the peremptory challenge is not related to the facts of the case;
>
> 2. [T]here was a lack of questioning to the challenged juror or a lack of meaningful questions;
>
> 3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;
>
> 4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and
>
> 5. [A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Id.* at 678 n.3.

We begin with the reason given for the peremptory challenge. In *Nieto*, the Texas Court of Criminal Appeals evaluated an explanation similar to the one given in this case:

> [The district attorney] explained that [the struck venireman] shared his last name with defendants that [the district attorney] had recently prosecuted

in a high-profile drug case. He also said that his strike was based on a note from [the chief felony prosecutor], who was present during the morning voir dire, which stated that [the struck venireman] glared at him. [The district attorney] added that he did not want to take the chance that [the struck venireman] was related to the drug family or had some resentment toward the prosecution. He concluded that the circumstances, taken together, formed the basis for the strike.

*Id.* at 677. The court held that, under the circumstances of the case, "the fact that a venireperson shares the same last name as a known criminal family is a race-neutral reason for the State to exercise a peremptory strike." *Id.* Specifically, the court held that "[i]t was sensible for [the prosecution] to be cautious with [the struck venireman] based on his recent conviction of the [known criminal] family, particularly when coupled with the note that [the struck venireman] glared at another prosecutor. Under these facts, the shared last name constitutes a race-neutral reason for the prosecutor to exercise a peremptory strike." *Id.* at 679.

The explanation in this case is similar to the one approved in *Nieto*; however, in this case, the circumstances supporting the plausibility of the purportedly race-neutral reason are missing. In *Nieto*, the prosecutor had recently obtained a conviction of a family in a high-profile drug case. *Id.* at 676–79. In this case, the prosecutor stated only that more than thirteen people with the last name Watson had been prosecuted in Jackson County. She did not state that any of the prosecutions had resulted in a conviction. She did not assert that the prosecutions were "high-profile" or that they took place recently. Furthermore, *Nieto* involved a "known criminal family." In this case, the prosecutor did not assert that Watson belonged to a "known criminal family." The prosecutor did not say what offenses were charged or whether they were the same or different. In short, there are many factual distinctions.

7

Next, we consider the fact that the prosecutor did not ask Watson any questions before striking him from the jury panel. In *Nieto*, the "lack of questioning" factor was addressed by the Texas Court of Criminal Appeals. *Id.* at 678. The court rejected the appellant's argument that a struck venireman should have been questioned before the State exercised its peremptory strike. *Id.* The court reasoned that "the lack of individual questioning is less of an issue when the jurors are questioned together." *Id.* at 679. Then, the court noted that the struck venireman "did not respond when the panel was asked whether they or anyone they were related to had been convicted or charged with a crime." *Id.* The court observed that "a panelist's response may be less than candid." *Id.* Although the court did not infer from the record that the struck venireman had been untruthful, it concluded that, under the circumstances of the case, *Batson* left room for the State to exercise peremptory strikes based on a "hunch" that the venireman had been dishonest. *Id.* The State's hunch was "sensible," the court reasoned, in light of the uncontroverted testimony by the prosecutor that the struck venireman had been "glaring" at the chief felony prosecutor for Smith County during the morning session of the voir dire. *Id.* According to the court, it was the "combination of the circumstances [that] created a credible reason for the strike." *Id.*

In this case, there was no allegation that Watson was "glaring" at the prosecutor. There was no allegation that Watson had manifested a hostile demeanor or that he had otherwise expressed animosity towards the State. Thus, the circumstances in this case are different than the circumstances in *Nieto*.

Next, we consider disparate treatment. During voir dire, the State told the panel the following:

8

I probably have touched some of your lives. I need to ask you that question. I mean, this is contrary to what I've mentioned before. Most defense lawyers worry about the association. I worry about that [sic] I've touched your lives by prosecuting you or a family member, and I'm going to have to ask you row by row if I've ever prosecuted you or a family member. I won't embarrass you. I'll just go however far we need to go, but please bear with me.

The prosecutor then went row-by-row questioning the panel members about prior prosecutions involving them or their family members. Each panel member who answered affirmatively was asked whether they thought it would affect them one way or the other. Watson did not answer affirmatively, and he was not questioned regarding the possibility that he might be affected one way or the other by any prior prosecutions.

In sum, the factors do not support the genuineness of the prosecutor's race-neutral explanation, but they do not establish purposeful discrimination. *See Watkins*, 245 S.W.3d at 447 (explaining that it is the opponent's "burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of the proponent's purposeful discrimination"). We are mindful that "the trial court is in the best position to determine if the prosecutor's explanation is genuinely race neutral." *Nieto*, 365 S.W.3d at 676. Thus, we must "defer to the trial court's ruling in the absence of exceptional circumstances." *Id.* In this case, the genuineness of the prosecutor's race-neutral explanation rested entirely on the credibility of the prosecutor, who was not cross-examined by appellant's trial counsel during the *Batson* hearing. *See Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004) ("The term 'pretext' is solely a question of fact; there is no issue of law. Therefore, the trial court was in the best position to make that credibility determination."). It was the trial court's role to assess

the credibility of the prosecutor. *See id.* We cannot substitute our judgment for that of the trial court. Accordingly, appellant's first issue is overruled.

### III. SUFFICIENCY OF THE EVIDENCE

In his second and third issues, appellant challenges the sufficiency of the evidence to support his conviction.

### A. Standard of Review

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899–99 (Tex. Crim. App. 2010) (plurality op.) (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

In reviewing the sufficiency of the evidence, we look at events occurring before, during, and after the commission of the offense, and we may rely on actions of the appellant that show an understanding and common design to do the prohibited act. *See*

10

*Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Each fact need not point directly and independently to the appellant's guilt, so long as the cumulative effect of all the incriminating facts is sufficient to support the conviction. *Id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 307 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

## B. Applicable Law

In relevant part, the penal code provides as follows:

[T]he offense [of assault] is a felony of the third degree if the offense is committed against . . . a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, if . . . it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code.

TEX. PENAL CODE ANN. § 22.01(b)(2)(A). In relevant part, the penal code also provides that, "[f]or the purposes of Subsections (b)(2)(A) and (b-1)(2), . . . a conviction under the laws of another state for an offense containing elements that are substantially similar to the elements of an offense listed in those subsections is a conviction of the offense listed." *Id.* § 22.01(f)(2).

## C. Discussion

11

In his second issue, appellant argues that the evidence is not sufficient to support his conviction because the State failed to prove that he has been previously convicted of an offense against a person whose relationship to or association with him is described by section 71.0021(b), 71.003, or 71.005 of the Texas Family Code. *See id.* § 22.01(b)(2)(A).[2] At trial, the State relied upon appellant's prior conviction in Louisiana for the offense of domestic abuse battery. The charging instrument in that case, which was admitted into evidence, alleged that appellant "did commit battery by the intentional use of force or violence upon the person of another household member, without the consent of the victim, to wit: Shauntelle Mitchell." The judgment, which was also admitted into evidence, states that appellant pleaded guilty to the offense of domestic abuse battery. According to appellant, the State failed to prove that he was living with the victim at the time of the Louisiana offense. We disagree.

The State had the burden to prove that appellant committed the prior offense against a person "whose relationship to or association with [appellant] is described by section 71.0021(b), 71.003, or 71.005 of the Texas Family Code." *See id.* Section 71.005 of the Texas Family Code describes a "household" relationship. *See* TEX. FAM. CODE ANN. § 71.005 (West 2008). A "household" relationship is defined as "persons living together in the same dwelling, without regard to whether they are related to each other." *Id.* The Louisiana indictment and conviction constituted circumstantial evidence from which a rational juror could infer that appellant was living together with the victim at the time of the offense. Accordingly, appellant's second issue is overruled.

---

[2] Three types of relationships are incorporated by reference: (1) a "dating relationship," as defined by Texas Family Code section 71.0021(b), *see* TEX. FAM. CODE ANN. § 71.0021(b) (West Supp. 2011); (2) a "family" relationship, as defined by Texas Family Code section 71.003, *see id.* § 71.003 (West 2008); and (3) a "household" relationship, as defined by Texas Family Code section 71.005, *see id.* § 71.005 (West 2008).

12

In his third issue, appellant argues that the evidence is not sufficient to prove a previous conviction for purposes of enhancing the offense of assault to the third-degree felony offense of assault-family violence.  *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A). Appellant argues that his conviction for domestic abuse battery in Louisiana is not equivalent to a conviction for "an offense under . . . Chapter [22], Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11" of the Texas Penal Code because the elements are not "substantially similar."  *Id.* § 22.01(b)(2)(A), (f)(2).  We disagree.

Under Texas law, a person commits the offense of assault if the person:

(1)  intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2)  intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3)  intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

*Id.* § 22.01(a).  Under Louisiana law, the offense of "domestic abuse battery" is defined as "the intentional use of force or violence committed by one household member upon the person of another household member."  *See State ex rel. R.H.*, 89 So.3d 390, 392 n.1 (La. Ct. App. 4th Cir. 2012) (quoting LA. REV. STAT. ANN. 14:35.3).

Appellant argues that the elements of the offenses are not substantially similar because Texas law requires "physical pain, illness, or any impairment of physical condition," whereas Louisiana law requires "force or violence."  We disagree.

Under Louisiana law, "battery is the intentional use of force or violence committed without the consent of the victim."  *Id.* at 392.  This is analogous "to intentionally or knowingly caus[ing] physical contact with another when the person

13

knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE ANN. § 22.01(a)(3). For purposes of this type of assault under Texas law, it is not necessary to prove bodily injury, as appellant suggests. Accordingly, we conclude that the offenses are "substantially similar." *Id.* § 22.01(f)(2). Appellant's third issue is overruled.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
28th day of February, 2013.

14