# NO. 12-10-00137-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *HARMON LEE MANUEL, II,* <br> *APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Harmon Lee Manuel, II, appeals his conviction for stalking, for which he was sentenced to imprisonment for ten years. Appellant raises four issues on appeal. We affirm.

### BACKGROUND

Appellant was charged by indictment with stalking and pleaded "not guilty." The matter proceeded to a jury trial. Following the presentation of evidence and argument of counsel, the jury found Appellant "guilty" as charged. The matter proceeded to a trial on punishment, after which the jury assessed Appellant's punishment at imprisonment for ten years. The trial court sentenced Appellant accordingly, and this appeal followed.

### *BATSON CHALLENGE*

In his first issue, Appellant argues that he was denied his right to a fair and impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution because (1) Appellant (1) is African American, (2) was charged with an interracial crime of violence, (3) the trial court failed to make inquiry regarding the basis for the State's striking African American venire members and failed to question the venire panel about racial prejudice against African

Americans, and, (4) as a result, an all white jury was impaneled. The crux of Appellant's first issue is his contention that the State improperly exercised peremptory strikes against African American jurors.

**Standard of Review and Governing Law**

The use of a peremptory challenge to strike a potential juror because of race violates the equal protection guarantee of the United States Constitution and Article 35.261 of the Texas Code of Criminal Procedure. *See Batson v. Kentucky*, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717, 90 L. Ed. 2d 69 (1986); TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006). In the face of perceived purposeful discrimination, a party may request a *Batson* hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 35.261.

*Batson* provides a three step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race. *Snyder v. Louisiana*, 552 U.S. 472, 476-77, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008); *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). The opponent of a peremptory challenge must first make a prima facie case that the peremptory challenge was exercised on the basis of race. *Snyder*, 552 U.S. at 476, 128 S. Ct. at 1207; *Watkins*, 245 S.W.3d at 447. If that showing has been made, the burden of production shifts to the proponent of the strike to offer a race-neutral basis for striking the juror in question. *Snyder*, 552 U.S. at 476–77, 128 S. Ct. at 1207; *Watkins*, 245 S.W.3d at 447. The issue in step two is the facial validity of the prosecutor's explanation, and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995); *see also Williams v. State*, 301 S.W.3d 675, 689 (Tex. Crim. App. 2009). In the third and final step, the trial court must determine whether the opponent of the strike has carried his burden to prove purposeful discrimination. *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207; *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). Throughout the challenge, the burden of persuasion remains with the defendant, who may continue to rebut the prosecutor's explanations before the trial court decides the *Batson* challenge. *Moore v. State*, 265 S.W.3d 73, 78 (Tex. App.–Houston [1st Dist.] 2008, no pet.).

Where the State has offered a race neutral explanation for the strikes, the defendant must prove that the prosecutor's reasons were merely a sham or pretext. *Watkins*, 245 S.W.3d at 447. "The ultimate plausibility of that race-neutral explanation is to be considered as part of the third

step of the analysis, in which the trial court determines whether the opponent of the strike (usually the defendant) has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of the proponent's purposeful discrimination." *Id*. "Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race neutral explanation for his strike is pre-textual, not genuine, is a question of fact for the trial court to resolve in the first instance." *Id*.

## Failure to Timely Object

For a *Batson* objection to be timely, it must have been raised before the trial court impaneled the jury. *See* TEX. CODE CRIM. PROC. ANN. art. 35.261(a). A jury is considered "impaneled" when the members of the jury have been both selected and sworn. *See Hill v. State*, 827 S.W.2d 860, 864 (Tex. Crim. App. 1992). In the case at hand, Appellant's attorney raised the objection, at Appellant's insistence, not only after the jury had been impaneled, but after the jury had found Appellant "guilty." Accordingly, we hold that Appellant's objection was untimely and that error, if any, was not preserved. *See* TEX. CODE CRIM. PROC. ANN. art 35.261(a); TEX. R. APP. P. 33.1(a).

## Trial Court's Duty to Act Sua Sponte

Appellant argues that the trial court had a duty to (1) inquire concerning the basis for the State's striking African American venire members and (2) question the venire panel about racial prejudice against African Americans. In support of these contentions, Appellant relies on *Mu'Min v. Virginia*, 500 U.S. 415, 111 S. Ct. 1899, 114 L. Ed. 2d 493 (1991). In *Mu'Min*, the appellant was charged with capital murder. *Id.*, 500 U.S. at 418, 111 S. Ct. at 1901. The court noted its holding in *Turner v. Murray*, 476 U.S. 28, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986), that a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. *See Mu'Min*, 500 U.S. at 424–25, 111 S. Ct. at 1904; *Turner*, 476 U.S. at 36-37, 106 S. Ct. at 1688. The Court elaborated, stating as follows:

> We enjoy more latitude in setting standards for voir dire in federal courts under our supervisory power than we have in interpreting the provisions of the Fourteenth Amendment with respect to voir dire in state courts. But two parallel themes emerge from both sets of cases: First, the possibility of racial prejudice against a black defendant charged with a violent crime against a white person is sufficiently real that the Fourteenth Amendment requires that inquiry be made into racial prejudice; second, the trial court retains great latitude in deciding what questions should be asked on voir dire.

*Mu'Min*, 500 U.S. at 424, 111 S. Ct. at 1904. However, in *Turner*, the Court further held that a defendant cannot complain of a judge's failure to question the venire on racial prejudice unless the defendant has specifically requested such an inquiry. *See Turner*, 476 U.S. at 36-37, 106 S. Ct. at 1688. We further note that in *Mu'Min*, the appellant requested sixty-four voir dire questions. *See Mu'Min*, 500 U.S. at 419, 111 S. Ct. at 1902. Twenty-four of these questions were approved by the trial court, but several questions relating to the content of news items that potential jurors might have read or seen were not approved. *Id.*

Unlike the Supreme Court, we do not exercise supervisory power over the trial court. *See* TEX. CONST. art. V, § 6 (West 2007). In Texas state courts, voir dire is ordinarily conducted by the attorneys for the parties within the boundaries of any reasonable restrictions on the examination the trial court imposes. *See, e.g., Splawn v. State*, 949 S.W.2d 867, 871 (Tex. App.–Dallas 1997, no pet). And although we are aware of no authority prohibiting the trial court from questioning the venire or even raising a *Batson* issue sua sponte, we do not read the holdings of *Mu'Min* and *Turner* to require the trial court to do so. In those cases, the trial court refused to propound questions to the venire submitted by the appellant. *See Mu'Min*, 500 U.S. at 419, 111 S. Ct. at 1902; *Turner*, 476 U.S. at 31–32, 106 S. Ct. at 1685. Here, there is no indication that Appellant was prohibited by the trial court from questioning the venire concerning racial prejudice during his voir dire examination nor that he was prohibited by the trial court from timely raising a *Batson* issue. Furthermore, because Appellant failed to pursue a *Batson* challenge, there is no indication from the record on appeal indicating (1) the race of the venire members stricken or, (2) assuming these venire members were, in fact, African American, a pattern that might have prompted the trial court to raise a *Batson* issue sua sponte. Accordingly, we hold that the trial court was under no duty to sua sponte raise a *Batson* challenge or question the venire panel about racial prejudice against African Americans. Appellant's first issue is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his second and third issues, Appellant argues that he was denied a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution because his trial counsel (1) failed to timely object to the State's exercising its preemptory strikes against African American venire members, (2) failed to question the venire panel about racial prejudice, and (3) failed to object to the State's improper jury argument concerning Appellant's decision not to testify.

4

**Standard of Review and Governing Law**

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. To satisfy this requirement, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

To satisfy the *Strickland* standard, the appellant is also required to show prejudice from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, an appellant must prove that but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See id.* Appellant has the burden of rebutting this presumption by presenting evidence illustrating why his trial counsel did what he did. *See id.* Appellant cannot meet this burden if the record does not affirmatively support the claim. *See Jackson v. State*, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998) (inadequate record on direct appeal to evaluate whether trial counsel provided ineffective assistance); *Phetvongkham v. State*, 841 S.W.2d 928, 932 (Tex. App.–Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to evaluate ineffective assistance claim); *see also Beck v. State*, 976 S.W.2d 265, 266 (Tex. App.–Amarillo 1998, pet. ref'd) (inadequate record for ineffective assistance claim, citing numerous other cases with inadequate records to support ineffective assistance claim). A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).

Appellant's burden on appeal is well established. *See **Saenzpardo v. State***, No. 05-03-01518-CR, 2005 WL 941339, at \*1 (Tex. App.–Dallas 2005, no pet.) (op., not designated for publication). Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his or her actions. *See **Bone v. State***, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. *Id.* at 835.

**Discussion**

Here, Appellant sets forth in his brief that his attorney's performance at trial fell below the professional norm because his counsel failed to timely object to the State's exercising preemptory strikes against African American venire members, failed to question the venire panel about racial prejudice, and failed to object to the State's improper jury argument concerning Appellant's decision not to testify.

With regard to Appellant's contentions that his counsel was ineffective during the voir dire examination, the record indicates, if anything, that the decision to not raise a ***Batson*** challenge was a considered decision. When the issue was brought, at Appellant's insistence, to the attention of the trial court following the jury's verdict, the following exchange between Appellant's counsel and the trial court occurred:

> [APPELLANT'S COUNSEL]: I don't know if this is the proper time to raise it, Your Honor, but my client wants to object to this jury being not a jury of his peers, that there were black jurors in the audience that were removed from the jury. There were several in the audience and two that were actually, I believe, stricken by the prosecution. So I just wanted to make that record.
>
> THE COURT: Always let lawyers tell me anything they want to. Never keep them from putting anything on the record. But it's my understanding of the Texas law that the time to make what the law - - I presume what you're suggesting is a Batson type of challenge - -
>
> [APPELLANT'S COUNSEL]: It is, Your Honor. I understand it's supposed to happen before a jury is sworn, but I made the decision not to do that. But my client wants me to make that record, so I made that record.
>
> THE COURT: So I guess just so the record will be complete, not knowing where we end up, for purposes of appeal, that you evaluated that aspect at the time of jury selection, that you discussed that with your client at that point - -
>
> [APPELLANT'S COUNSEL]: I did not discuss it with my client, no.
>
> THE COURT: You personally evaluated it and made the decision not to raise that objection - -

6

[APPELLANT'S COUNSEL]: Correct.

From this exchange, we cannot surmise the precise reasoning underlying Appellant's counsel's decision not to raise a **Batson** challenge before the jury was impaneled. However, we can determine that Appellant's counsel evaluated the matter at the time of jury selection and made the conscious decision not to raise the objection. Accordingly, we conclude that presumption that Appellant's counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy is not overcome.

With regard to why Appellant's counsel did not question the venire concerning racial prejudice or object to the prosecution's alleged improper argument, we note that normally, a silent record cannot defeat the strong presumption of effective assistance of counsel. *See Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); *but see Andrews v. State*, 159 S.W.3d 98, 102-03 (Tex. Crim. App. 2005) (reversing a conviction "in a rare case" on the basis of ineffective assistance of counsel when trial counsel did not object to a misstatement of law by the prosecutor during argument).

We are mindful that, in some "extremely unusual circumstances[,]" the record may contain all of the information an appellate court needs to conclude that there could be "no reasonable trial strategy for failing to object" to, for instance, a prosecuting attorney's misstatement of the law. *See Andrews*, 159 S.W.3d at 103. Counsel's reasons in *Andrews*, if any, were unnecessary to resolve the ineffective assistance of counsel claim. *See Berry v. State*, No. 05-04-01161-CR, 2005 WL 1515512, at *3 (Tex. App.–Dallas 2005, no pet.). However, the "extremely unusual circumstances" present in *Andrews* are not before us in the case at hand. Failing to object to a misstatement of the law that is detrimental to one's client when the harm is so clearly presented by the record on appeal is quite different from failing to object to improper prosecutorial argument as a matter of trial strategy. *Cf. Saenzpardo*, 2005 WL 941339, at *2; *Hartsfield v. State*, 2009 WL 2767321, at *2 (Tex. App.–Tyler Sept 2, 2009, pet. ref'd) (mem. op., not designated for publication) (distinguishing facts in *Andrews* from situation in which trial counsel failed to object to expert's qualifications); *see, e.g., McPherson v. State*, No. 03-03-00144-CR, 2004 WL 162942, at *7 (Tex. App–Austin Jan. 29, 2004, pet. ref'd) (mem. op., not designated for publication) (trial counsel testified that he did not object to jury argument because he hoped not to draw jury's attention to client's failure to testify). Moreover, Appellant's trial counsel could reasonably have believed that introducing the issue of racial prejudice before

the venire would not be advantageous to his client despite the fact that his client was a member of a different race than the victim.

Having reviewed the record in the instant case, we conclude that the facts before us are distinguishable from the facts in *Andrews*. Thus, we decline to hold that the record in the instant case contains all of the information needed for us to conclude that there could be no reasonable trial strategy for Appellant's counsel's not objecting to the State's allegedly improper jury argument or declining to question the venire concerning racial prejudice. Therefore, we hold that Appellant has not met the first prong of *Strickland* because the record does not contain evidence concerning Appellant's trial counsel's reasons for choosing the course he did. As a result, Appellant cannot overcome the strong presumption that his counsel performed effectively. Appellant's second and third issues are overruled.

## CRUEL AND UNUSUAL PUNISHMENT

In his fourth issue, Appellant argues that his sentence amounts to cruel and unusual punishment in violation of the United States Constitution. However, Appellant made no timely objection to the trial court raising the issue of cruel and unusual punishment and has, therefore, waived the issues on appeal. *See Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver with regard to rights under the United States Constitution); TEX R. APP. P. 33.1. However, even absent waiver, we conclude that the sentence about which Appellant complains did not constitute cruel and unusual punishment.

The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.–Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.–Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 664. In the case at hand, Appellant was convicted of stalking, the punishment range for which is two to ten years. *See* TEX. PENAL CODE ANN. §§ 12.34(a), 42.072 (West 2011). Here, the sentence imposed by the trial court falls within the range set forth by the legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se.

Nonetheless, Appellant urges the court to perform the three part test originally set forth in

***Solem v. Helm***, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. ***Solem***, 463 U.S. at 292, 103 S. Ct. at 3011. The application of the ***Solem*** test has been modified by Texas courts and the Fifth Circuit Court of Appeals in light of the Supreme Court's decision in ***Harmelin v. Michigan***, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.,* ***McGruder v. Puckett***, 954 F.2d 313, 316 (5th Cir.), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L.Ed.2d 98 (1992); *see also* ***Jackson v. State***, 989 S.W.2d 842, 845-46 (Tex. App.–Texarkana 1999, no pet.).

We must first determine whether Appellant's sentences are grossly disproportionate. In so doing, we are guided by the holding in ***Rummel v. Estell***, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). In ***Rummel***, the Supreme Court addressed the proportionality claim of an appellant who had received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. ***Id.***, 445 U.S. at 266, 100 S. Ct. at 1135. A life sentence was imposed because the appellant also had two prior felony convictions—one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. ***Id.***, 445 U.S. at 266, 100 S. Ct. at 1134-35. After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. ***Id.***, 445 U.S. at 285, 100 S. Ct. at 1145.

In the case at hand, the offense committed by Appellant—stalking—is more serious than any of the offenses committed by the appellant in ***Rummel***, while Appellant's sentence is less severe as the life sentence upheld by the Supreme Court in ***Rummel***. Thus, it follows that if the sentence in ***Rummel*** was not unconstitutionally disproportionate, then neither is the sentence assessed against Appellant in the case at hand. Therefore, since we do not find the threshold test to be satisfied, we need not apply the remaining elements of the ***Solem*** test. Appellant's fourth issue is overruled.

9

## DISPOSITION

Having overruled Appellant's first, second, third, and fourth issues, we ***affirm*** the trial court's judgment.

### SAM GRIFFITH
Justice

Opinion delivered August 24, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)