NO.
12-10-00137-CR

                        

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

HARMON
LEE MANUEL, II,                          §                 APPEAL FROM THE 7TH

APPELLANT

 

V.                                                                         §                 JUDICIAL
DISTRICT COURT

 

THE
STATE OF TEXAS,

APPELLEE                                                        §                 SMITH
COUNTY, TEXAS

                                                        
                                           

MEMORANDUM OPINION

            Harmon
Lee Manuel, II, appeals his conviction for stalking, for which he was sentenced
to imprisonment for ten years.  Appellant raises four issues on appeal.  We
affirm.

 

Background

            Appellant
was charged by indictment with stalking and pleaded “not guilty.”  The matter
proceeded to a jury trial.  Following the presentation of evidence and argument
of counsel, the jury found Appellant “guilty” as charged.  The matter proceeded
to a trial on punishment, after which the jury assessed Appellant’s punishment
at imprisonment for ten years.  The trial court sentenced Appellant
accordingly, and this appeal followed.

 

Batson
Challenge

            In
his first issue, Appellant argues that he was denied his right to a fair and
impartial jury under the Sixth and Fourteenth Amendments to the United States
Constitution because (1) Appellant (1) is African American, (2) was charged
with an interracial crime of violence, (3) the trial court failed to make
inquiry regarding the basis for the State’s striking African American venire
members and failed to question the venire panel about racial prejudice against
African Americans, and, (4) as a result, an all white jury was impaneled.  The
crux of Appellant’s first issue is his contention that the State improperly
exercised peremptory strikes against African American jurors.  

Standard
of Review and Governing Law

            The
use of a peremptory challenge to strike a potential juror because of race
violates the equal protection guarantee of the United States Constitution and
Article 35.261 of the Texas Code of Criminal Procedure.  See Batson
v. Kentucky, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717, 90 L. Ed. 2d 69
(1986); Tex. Code Crim. Proc. Ann.
art. 35.261 (West 2006).  In the face of perceived purposeful discrimination, a
party may request a Batson hearing.  See Tex. Code Crim. Proc. Ann. art. 35.261.

Batson provides a three step process
for a trial court to use in adjudicating a claim that a peremptory challenge
was based on race.  Snyder v. Louisiana, 552 U.S. 472, 476-77,
128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008); Watkins v. State,
245 S.W.3d 444, 447 (Tex. Crim. App. 2008).  The opponent of a peremptory
challenge must first make a prima facie case that the peremptory challenge was
exercised on the basis of race.  Snyder, 552 U.S. at 476, 128 S.
Ct. at 1207; Watkins, 245 S.W.3d at 447.  If that showing has
been made, the burden of production shifts to the proponent of the strike to
offer a race-neutral basis for striking the juror in question.  Snyder,
552 U.S. at 476–77, 128 S. Ct. at 1207; Watkins, 245 S.W.3d at
447.  The issue in step two is the facial validity of the prosecutor's
explanation, and “[u]nless a discriminatory intent is inherent in the
prosecutor's explanation, the reason offered will be deemed race neutral.” Purkett
v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834
(1995); see also Williams v. State, 301 S.W.3d 675, 689
(Tex. Crim. App. 2009).  In the third and final step, the trial court must
determine whether the opponent of the strike has carried his burden to prove
purposeful discrimination.  Snyder, 552 U.S. at 477, 128 S. Ct.
at 1207; Young v. State, 283 S.W.3d 854, 866 (Tex. Crim. App.
2009).  Throughout the challenge, the burden of persuasion remains with the
defendant, who may continue to rebut the prosecutor's explanations before the
trial court decides the Batson challenge.  Moore v. State,
265 S.W.3d 73, 78 (Tex. App.–Houston [1st Dist.] 2008, no pet.).

Where
the State has offered a race neutral explanation for the strikes, the defendant
must prove that the prosecutor's reasons were merely a sham or pretext.  Watkins,
245 S.W.3d at 447.  “The ultimate plausibility of that race-neutral explanation
is to be considered as part of the third step of the analysis, in which the
trial court determines whether the opponent of the strike (usually the
defendant) has satisfied his burden of persuasion to establish by a
preponderance of the evidence that the strike was indeed the product of the
proponent's purposeful discrimination.”  Id.  “Whether
the opponent satisfies his burden of persuasion to show that the proponent's
facially race neutral explanation for his strike is pre-textual, not genuine,
is a question of fact for the trial court to resolve in the first instance.”  Id.

Failure
to Timely Object

            For
a Batson objection to be timely, it must have been raised before
the trial court impaneled the jury. See Tex. Code Crim. Proc. Ann. art. 35.261(a).  A jury is
considered “impaneled” when the members of the jury have been both selected and
sworn.  See Hill v. State, 827 S.W.2d 860, 864 (Tex. Crim.
App. 1992).  In the case at hand, Appellant’s attorney raised the objection, at
Appellant’s insistence, not only after the jury had been impaneled, but after
the jury had found Appellant “guilty.”  Accordingly, we hold that Appellant’s
objection was untimely and that error, if any, was not preserved.  See Tex. Code Crim. Proc. Ann. art
35.261(a); Tex. R. App. P.
33.1(a).   

Trial
Court’s Duty to Act Sua Sponte

            Appellant
argues that the trial court had a duty to (1) inquire concerning the basis for
the State’s striking African American venire members and (2) question the
venire panel about racial prejudice against African Americans.  In support of
these contentions, Appellant relies on Mu’Min v. Virginia, 500
U.S. 415, 111 S. Ct. 1899, 114 L. Ed. 2d 493 (1991).  In Mu’Min,
the appellant was charged with capital murder.  Id., 500
U.S. at 418, 111 S. Ct. at 1901.  The court noted its holding in Turner
v. Murray, 476 U.S. 28, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986), that a
capital defendant accused of an interracial crime is entitled to have
prospective jurors informed of the race of the victim and questioned on the
issue of racial bias.  See Mu’Min, 500 U.S. at 424–25, 111 S. Ct.
at 1904; Turner, 476 U.S. at 36­-37, 106 S. Ct. at 1688.  The
Court elaborated, stating as follows:

 

            We enjoy more
latitude in setting standards for voir dire in federal courts under our
supervisory power than we have in interpreting the provisions of the Fourteenth
Amendment with respect to voir dire in state courts.  But two parallel themes
emerge from both sets of cases:  First, the possibility of racial prejudice
against a black defendant charged with a violent crime against a white person
is sufficiently real that the Fourteenth Amendment requires that inquiry be
made into racial prejudice; second, the trial court retains great latitude in
deciding what questions should be asked on voir dire.

Mu’Min, 500 U.S. at 424, 111 S. Ct. at
1904.  However, in Turner, the Court further held that a
defendant cannot complain of a judge’s failure to question the venire on racial
prejudice unless the defendant has specifically requested such an inquiry.  See
Turner, 476 U.S. at 36­-37, 106 S. Ct. at 1688.  We further note
that in Mu’Min, the appellant requested sixty-four voir dire
questions.  See Mu’Min, 500 U.S. at 419, 111 S. Ct. at 1902. 
Twenty-four of these questions were approved by the trial court, but several
questions relating to the content of news items that potential jurors might
have read or seen were not approved.  Id.  

            Unlike
the Supreme Court, we do not exercise supervisory power over the trial court.  See
Tex. Const. art. V, § 6 (West
2007).  In Texas state courts, voir dire is ordinarily conducted by the
attorneys for the parties within the boundaries of any reasonable restrictions
on the examination the trial court imposes.  See, e.g., Splawn v.
State, 949 S.W.2d 867, 871 (Tex. App.–Dallas 1997, no pet).  And
although we are aware of no authority prohibiting the trial court from
questioning the venire or even raising a Batson issue sua sponte,
we do not read the holdings of Mu’Min and Turner to
require the trial court to do so.  In those cases, the trial court refused to
propound questions to the venire submitted by the appellant.  See Mu’Min,
500 U.S. at 419, 111 S. Ct. at 1902; Turner, 476 U.S. at 31–32,
106 S. Ct. at 1685.  Here, there is no indication that Appellant was prohibited
by the trial court from questioning the venire concerning racial prejudice
during his voir dire examination nor that he was prohibited by the trial court
from timely raising a Batson issue.  Furthermore, because
Appellant failed to pursue a Batson challenge, there is no
indication from the record on appeal indicating (1) the race of the venire
members stricken or, (2) assuming these venire members were, in fact, African
American, a pattern that might have prompted the trial court to raise a Batson
issue sua sponte.  Accordingly, we hold that the trial court was under
no duty to sua sponte raise a Batson challenge or question the
venire panel about racial prejudice against African Americans.  Appellant’s
first issue is overruled.

 

Ineffective
Assistance of Counsel

            In
his second and third issues, Appellant argues that he was denied a fair trial
under the Sixth and Fourteenth Amendments to the United States Constitution
because his trial counsel (1) failed to timely object to the State’s exercising
its preemptory strikes against African American venire members, (2) failed to
question the venire panel about racial prejudice, and (3) failed to object to
the State’s improper jury argument concerning Appellant’s decision not to
testify.  

Standard
of Review and Governing Law

Claims
of ineffective assistance of counsel are evaluated under the two step analysis
articulated in Strickland v. Washington, 466 U.S. 668, 104
S. Ct. 2052, 80 L. Ed. 674 (1984).  The first step requires the appellant to
demonstrate that trial counsel=s representation fell below an
objective standard of reasonableness under prevailing professional norms.  See
Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. 
To satisfy this requirement, the appellant must identify the acts or omissions
of counsel alleged to be ineffective assistance and affirmatively prove that
they fell below the professional norm of reasonableness.  See McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The reviewing
court will not find ineffectiveness by isolating any portion of trial counsel=s representation, but will judge the claim based on
the totality of the representation.  See Strickland,
466 U.S. at 695, 104 S. Ct. at 2069.

To
satisfy the Strickland standard, the appellant is also required
to show prejudice from the deficient performance of his attorney.  See Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).  To
establish prejudice, an appellant must prove that but for counsel=s deficient performance, the result of the
proceeding would have been different.  See Strickland,
466 U.S. at 694, 104 S. Ct. at 2068.

In
any case considering the issue of ineffective assistance of counsel, we begin
with the strong presumption that counsel was effective.  See Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  We must
presume counsel=s actions and decisions were
reasonably professional and were motivated by sound trial strategy.  See id. 
Appellant has the burden of rebutting this presumption by presenting evidence
illustrating why his trial counsel did what he did.  See id. 
Appellant cannot meet this burden if the record does not affirmatively support
the claim.  See Jackson v. State, 973 S.W.2d 954, 955 (Tex. Crim.
App. 1998) (inadequate record on direct appeal to evaluate whether trial
counsel provided ineffective assistance); Phetvongkham v. State,
841 S.W.2d 928, 932 (Tex. App.–Corpus Christi 1992, pet. ref=d, untimely filed) (inadequate record to evaluate
ineffective assistance claim); see also Beck v. State,
976 S.W.2d 265, 266 (Tex. App.–Amarillo 1998, pet. ref=d) (inadequate record for ineffective assistance
claim, citing numerous other cases with inadequate records to support
ineffective assistance claim).  A record that specifically focuses on the
conduct of trial counsel is necessary for a proper evaluation of an
ineffectiveness claim.  See Kemp v. State, 892 S.W.2d 112, 115
(Tex. App.–Houston [1st Dist.] 1994, pet. ref=d).


Appellant=s burden on appeal is well established.  See Saenzpardo
v. State, No. 05-03-01518-CR, 2005 WL 941339, at *1 (Tex. App.–Dallas
2005, no pet.) (op., not designated for publication).  Before being condemned
as unprofessional and incompetent, defense counsel should be given an
opportunity to explain his or her actions.  See Bone v. State, 77
S.W.3d 828, 836 (Tex. Crim. App. 2002).  Thus, absent a properly developed
record, an ineffective assistance claim must usually be denied as speculative,
and, further, such a claim cannot be built upon retrospective speculation.  Id.
at 835.

Discussion

Here,
Appellant sets forth in his brief that his attorney=s performance at trial fell below the professional
norm because his counsel failed to timely object to the State’s exercising
preemptory strikes against African American venire members, failed to question
the venire panel about racial prejudice, and failed to object to the State’s
improper jury argument concerning Appellant’s decision not to testify.

With
regard to Appellant’s contentions that his counsel was ineffective during the
voir dire examination, the record indicates, if anything, that the decision to
not raise a Batson challenge was a considered decision.  When the
issue was brought, at Appellant’s insistence, to the attention of the trial
court following the jury’s verdict, the following exchange between Appellant’s
counsel and the trial court occurred:

 

[APPELLANT’S
COUNSEL]:  I don’t know if this is the proper time to raise it, Your Honor, but
my client wants to object to this jury being not a jury of his peers, that
there were black jurors in the audience that were removed from the jury.  There
were several in the audience and two that were actually, I believe, stricken by
the prosecution.  So I just wanted to make that record.

 

THE
COURT:  Always let lawyers tell me anything they want to.  Never keep them from
putting anything on the record.  But it’s my understanding of the Texas law
that the time to make what the law - - I presume what you’re suggesting is a
Batson type of challenge - -

 

[APPELLANT’S
COUNSEL]:  It is, Your Honor.  I understand it’s supposed to happen before a
jury is sworn, but I made the decision not to do that.  But my client wants me
to make that record, so I made that record.

 

THE
COURT:  So I guess just so the record will be complete, not knowing where we end
up, for purposes of appeal, that you evaluated that aspect at the time of jury
selection, that you discussed that with your client at that point - -

 

[APPELLANT’S
COUNSEL]:  I did not discuss it with my client, no.

 

THE
COURT:  You personally evaluated it and made the decision not to raise that
objection - -

 

[APPELLANT’S
COUNSEL]:  Correct.

 

From this
exchange, we cannot surmise the precise reasoning underlying Appellant’s
counsel’s decision not to raise a Batson challenge before the
jury was impaneled.  However, we can determine that Appellant’s counsel
evaluated the matter at the time of jury selection and made the conscious
decision not to raise the objection.  Accordingly, we conclude that presumption
that Appellant’s counsel’s actions and decisions were reasonably professional
and were motivated by sound trial strategy is not overcome.

With
regard to why Appellant’s counsel did not question the venire concerning racial
prejudice or object to the prosecution’s alleged improper argument, we note
that normally, a silent record cannot defeat the strong presumption of
effective assistance of counsel.  See Thompson v. State,
9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); but see Andrews v. State,
159 S.W.3d 98, 102-03 (Tex. Crim. App. 2005) (reversing a conviction Ain a rare case@ on the basis of ineffective
assistance of counsel when trial counsel did not object to a misstatement of
law by the prosecutor during argument).

 We
are mindful that, in some “extremely unusual circumstances[,]” the record may
contain all of the information an appellate court needs to conclude that there
could be “no reasonable trial strategy for failing to object” to, for instance,
a prosecuting attorney’s misstatement of the law.  See Andrews,
159 S.W.3d at 103.  Counsel’s reasons in Andrews, if any, were
unnecessary to resolve the ineffective assistance of counsel claim.  See Berry
v. State, No. 05-04-01161-CR, 2005 WL 1515512, at *3 (Tex. App.–Dallas
2005, no pet.).  However, the Aextremely unusual circumstances@ present in Andrews are not before us
in the case at hand.  Failing to object to a misstatement of the law that is
detrimental to one’s client when the harm is so clearly presented by the record
on appeal is quite different from failing to object to improper prosecutorial
argument as a matter of trial strategy.  Cf. Saenzpardo,
2005 WL 941339, at *2; Hartsfield v. State, 2009 WL 2767321, at
*2 (Tex. App.–Tyler Sept 2, 2009, pet. ref’d) (mem. op., not designated for
publication) (distinguishing facts in Andrews from situation in
which trial counsel failed to object to expert’s qualifications); see, e.g.,
McPherson v. State, No. 03‑03‑00144‑CR, 2004 WL
162942, at *7 (Tex. App–Austin Jan. 29, 2004, pet. ref’d) (mem. op., not
designated for publication) (trial counsel testified that he did not object to
jury argument because he hoped not to draw jury’s attention to client’s failure
to testify).  Moreover, Appellant’s trial counsel could reasonably have
believed that introducing the issue of racial prejudice before the venire would
not be advantageous to his client despite the fact that his client was a member
of a different race than the victim.  

Having
reviewed the record in the instant case, we conclude that the facts before us
are distinguishable from the facts in Andrews.  Thus, we
decline to hold that the record in the instant case contains all of the
information needed for us to conclude that there could be no reasonable trial
strategy for Appellant’s counsel’s not objecting to the State’s allegedly
improper jury argument or declining to question the venire concerning racial
prejudice.  Therefore, we hold that Appellant has not met the first prong of Strickland
because the record does not contain evidence concerning Appellant=s trial counsel=s reasons for choosing the course
he did.  As a result, Appellant cannot overcome the strong presumption that his
counsel performed effectively.  Appellant=s second and third issues are
overruled.

 

Cruel
and Unusual Punishment

            In
his fourth issue, Appellant argues that his sentence amounts to cruel and
unusual punishment in violation of the United States Constitution.  However,
Appellant made no timely objection to the trial court raising the issue of
cruel and unusual punishment and has, therefore, waived the issues on appeal.  See
Curry v. State, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver
with regard to rights under the United States Constitution); Tex R. App. P. 33.1.  However, even
absent waiver, we conclude that the sentence about which Appellant complains
did not constitute cruel and unusual punishment.

The
legislature is vested with the power to define crimes and prescribe penalties. 
See Davis v. State, 905 S.W.2d 655, 664 (Tex.
App.–Texarkana 1995, pet. ref=d); see also Simmons
v. State, 944 S.W.2d 11, 15 (Tex. App.–Tyler 1996, pet. ref=d).  Courts have repeatedly held that punishment
which falls within the limits prescribed by a valid statute is not excessive,
cruel, or unusual.  See Harris v. State, 656 S.W.2d 481,
486 (Tex. Crim. App. 1983); Jordan v. State, 495 S.W.2d 949, 952
(Tex. Crim. App. 1973); Davis, 905 S.W.2d at 664.  In the case at
hand, Appellant was convicted of stalking, the punishment range for which is
two to ten years.  See Tex. Penal
Code Ann. §§ 12.34(a), 42.072 (West 2011).  Here, the sentence imposed
by the trial court falls within the range set forth by the legislature. 
Therefore, the punishment is not prohibited as cruel, unusual, or excessive per
se.

Nonetheless,
Appellant urges the court to perform the three part test originally set forth
in Solem v. Helm, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637
(1983). Under this test, the proportionality of a sentence is evaluated by
considering (1) the gravity of the offense and the harshness of the penalty,
(2) the sentences imposed on other criminals in the same jurisdiction, and (3)
the sentences imposed for commission of the same crime in other jurisdictions. 
Solem, 463 U.S. at 292, 103 S. Ct. at 3011.  The application of
the Solem test has been modified by Texas courts and the Fifth
Circuit Court of Appeals in light of the Supreme Court=s decision in Harmelin v. Michigan,
501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold
determination that the sentence is grossly disproportionate to the crime before
addressing the remaining elements. See, e.g., McGruder v. Puckett,
954 F.2d 313, 316 (5th Cir.), cert. denied, 506 U.S. 849, 113 S. Ct.
146, 121 L.Ed.2d 98 (1992); see also Jackson v. State, 989
S.W.2d 842, 845-46 (Tex. App.–Texarkana 1999, no pet.).

We
must first determine whether Appellant=s sentences are grossly
disproportionate.  In so doing, we are guided by the holding in Rummel v.
Estell, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980).  In Rummel,
the Supreme Court addressed the proportionality claim of an appellant who had
received a mandatory life sentence under a prior version of the Texas habitual
offender statute for a conviction of obtaining $120.75 by false pretenses. Id.,
445 U.S. at 266, 100 S. Ct. at 1135.  A life sentence was imposed because the
appellant also had two prior felony convictions––one for fraudulent use of a
credit card to obtain $80.00 worth of goods or services and the other for
passing a forged check in the amount of $28.36.  Id., 445
U.S. at 266, 100 S. Ct. at 1134-35.  After recognizing the legislative
prerogative to classify offenses as felonies and, further, considering the
purpose of the habitual offender statute, the court determined that the
appellant=s mandatory life sentence did not
constitute cruel and unusual punishment. Id., 445 U.S. at
285, 100 S. Ct. at 1145.

In
the case at hand, the offense committed by Appellant––stalking––is more serious
than any of the offenses committed by the appellant in Rummel,
while Appellant’s sentence is less severe as the life sentence upheld by the
Supreme Court in Rummel.  Thus, it follows that if the sentence
in Rummel was not unconstitutionally disproportionate, then
neither is the sentence assessed against Appellant in the case at hand. 
Therefore, since we do not find the threshold test to be satisfied, we need not
apply the remaining elements of the Solem test.  Appellant’s
fourth issue is overruled.

 

Disposition

            Having
overruled Appellant’s first, second, third, and fourth issues, we affirm
the trial court’s judgment.            

                                                                                    Sam Griffith

                                                                            
           Justice

 

 

 

Opinion delivered August 24,
2011.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)